UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 07 |
| vs. ) | Judge Samuel Der-Yeghiayan |
| ) | |
| CHUCK MAALI ) | |

**FILED**
APR 08 2008
Judge Samuel Der-Yeghiayan
U.S. District Court

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CHUCK MAALI, and his attorney, STEVEN SHOBAT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with having corruptly accepted and agreed to accept cash from an individual, intending to be influenced and rewarded in connection with duties as an auditor for the Illinois Department of Revenue ("Department of Revenue"), in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(1)(B).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the indictment. Count Two charges the defendant with having corruptly accepted and agreed to accept cash from an individual intending to be influenced and rewarded in connection with duties as an auditor for the Department of Revenue, in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

With respect to Count 2 of the indictment, defendant Chuck Maali ("Maali"), admits that, from in or about July 2002 to in or about January 22, 2003, while he was employed as an auditor by the Illinois Department of Revenue ("IDR"), Maali corruptly accepted and agreed to accept cash from Dean Roupas ("Roupas"), who was an attorney, and Maali intended to be influenced and rewarded in connection with his duties as an auditor for the IDR, in a series of transactions having a value of $5,000 or more, involving the IDR, a state agency that received in excess of $10,000 in federal funding in a twelve-month period between July 1, 2002, to June 30, 2003.

At the time, Maali knew that the IDR had rules that prohibited employees from accepting gifts, loans, or gratuities of more than $50, or any thing of value intended to influence an employee in connection with their job. Maali also knew that the IDR's rules prohibited employees from referring taxpayers to an attorney or law firm in connection with any official business involving the IDR, and that the IDR's rules required employees to report to the IDR any offer of a bribe and any unethical practice by tax practitioners.

During the time period charged, Maali received approximately $7,500 from Roupas; Maali also received an additional $2,000 from Roupas in payments made in approximately 2001, for total payments of approximately $9,500, as described below. Maali understood that all of the payments that Maali received were intended to influence and reward Maali in connection with the performance of his duties at the IDR.

Roupas paid Maali to refer clients to Roupas - namely, companies that were being audited by Maali for the Illinois Department of Revenue - and to help Roupas resolve the tax cases that Maali referred to Roupas, in a manner that was favorable to Roupas's clients. Maali and Roupas concealed this agreement - and the payments that were made - from the Department of Revenue and from the companies that hired Roupas. Roupas paid Maali in cash in order to conceal the fact that Roupas was making such payments.

Maali referred 3 companies that he was auditing. The payments that Roupas made to Maali, influenced Maali's decision making in connection with the audits of those businesses. Maali worked closely with Roupas to conclude those audits in a manner that was favorable to the companies Maali had referred to Roupas. Maali understood that Roupas paid Maali money with the intent to influence Maali's decisions in connection with the audits Maali was conducting, so that those companies would receive a favorable determination by the Department of Revenue.

Specifically, in or about July 2001, Maali referred a company ("SFS") to Roupas in connection with an audit of the company that Maali was conducting. The company hired Roupas and Roupas paid Maali approximately $2,000 in connection with that case. It was Maali's understanding that Roupas was trying to influence Maali as the auditor on the case, as well as paying Maali for the referral. Maali understood believed that Roupas wanted Maali to do favors for the company being audited. In fact, that payment influenced the way that Maali handled the audit, favoring the taxpayer.

In or about 2002, Maali referred the owner of a grocery store ("CE") to Roupas. In July 2002, Roupas gave Maali $5,000 in cash in connection with that case, and in or about December 2002, Roupas gave Maali cash of approximately $1,500 to $2,000 in connection with that case. Maali knew that he had taken bribes in connection with the audit which was still on-going. Maali understood that Roupas was attempting to influence Maali's actions as an auditor, and to obtain a more favorable outcome for his client, as well as paying Maali for the referral. When Maali accepted the money, Maali was agreeing that he would give favorable action to Roupas and his client. In fact, during the course of the audit, Maali took steps to help Roupas's client as a result of Roupas's payment. Maali initially told Roupas that the total tax liability for his client was between $400,000 and $500,000. Roupas asked Maali to lower the total tax liability to under $100,000, and Maali agreed to do. Maali's agreement to do so was influenced by Roupas's payment of money.

In or about 2002, Maali referred a company ("AE") to Roupas in connection with an audit that Maali had conducted. Roupas appealed the civl fraud penalty imposed by Maali. In order to help Roupas, Maali suggested certain arguments that Roupas could use to argue against that penalty. In or about January 15, 2003, Roupas paid Maali approximately $1000 cash in connection with that case, which was intended to influence and reward Maali.

## Relevant Conduct

7. Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

As described above, in July 2001, Maali received a payment of approximately $2000 from Roupas, intended to influence and reward Maali in connection with Maali's work as an auditor for the IDR. Moreover, in approxmiately 2002, while auditing a company, Maali referred the owner of that company to Roupas for legal advice concerning federal taxes, and Maali referred 2 to 4 other people to Roupas for similar issues. Roupas gave Maali approximately $1,000 in cash and gift certificates for those referrals.

8. Defendant, for purposes of computing his sentence under Guideline §1B1.2, stipulates to having committed the following additional offense:

Maali admits that, from in or about January 2001 to in or about December 2001, while he was employed as an auditor by the IDR, Maali corruptly accepted and agreed to accept two cash payments - each payment being approximately $5000 - totalling approximately $10,000, from an accountant, in connection with an audit that Maali was conducting, and Maali intended to be influenced and rewarded in connection with his duties as an auditor for the IDR, in a series of transactions having a value of $5,000 or more, involving the IDR, a state agency that received in excess of $10,000 in federal funding in a twelve-month period.

Specifically, while Maali was conducting an audit of a store, the accountant offered to pay Maali $5000 in exchange for Maali's providing favorable treatment to the store. Maali agreed to accept the money and to provide favorable treatment to the store. Knowing that the accountant was going to give Maali money, influenced Maali's decision making concerning that audit, and Maali took certain steps to lower the store's tax liability. In or about the spring of 2001, the accountant paid Maali approximately $5000 cash.

While Maali was conducting another audit of a separate store owned by the same company, the accountant offered to pay Maali again in exchange for Maali's providing favorable treatment to the store. Maali agreed to accept the money and to provide favorable treatment to the store. Knowing that the accountant was going to give Maali money, influenced Maali's decision making concerning that audit, and Maali attempted to take certain steps to lower the store's tax liability. In or about the summer of 2001, the accountant gave Maali an envelope with cash. The accountant indicated that the payment was the same as before (approximately $5000). Maali directed the accountant to give that cash to a specific charity.

9.  The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

10.  Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a.  A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of at least two years but not more than three years.

   b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

11.  Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

12.  For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following points:

a.  **Applicable Guidelines**. The parties disagree on the appropriate Sentencing Guidelines Manual to be applied in this case. It is the government's position that the Sentencing Guidelines to be applied are those in effect at the time of sentencing, namely the November 2007 Guidelines Manual. The defendant reserves the right to argue that the November 2002 Guidelines Manual should be applied. The following statements regarding the calculation of the Sentencing Guidelines are based on the 2007 Guidelines Manual currently in effect, except as indicated.

b.  **Offense Level Calculations.**

i.  Under the November 2007 Guideline Manual, the base offense level for the charge in the indictment is 14, pursuant to Guideline §2C1.1(a)(1), because the

defendant was a public official. Under the 2002 Guideline Manual, the base offense level for the charge in the indictment is 10, pursuant to Guideline §2C1.1(a);

        ii.       Pursuant to Guidelines § 2C1.1(b)(1), the base offense level should be increased by 2 levels because the offense involved more than one bribe.

        iii.      Pursuant to Guideline §§ 2C1.1(b)(2)(A)(ii), and 2B1.1(b)(1)(C), the base offense level should be increased by 4 levels because the value of the payments was more than $10,000 but less than $30,000, namely $19,500, including the charged offense, together with relevant conduct and the stipulated offense.

        iv.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        v.       In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for

acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, under the 2007 Guideline Manual, the anticipated offense level is 17, (under the 2002 Guideline Manual, the anticipated offense level would have been 13), which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of **24 to 30** months' imprisonment (2007) (under the 2002 Guideline Manual the anticipated range would have been **12 to 18** months), in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, certain components of those calculations – specifically, those set forth above in subparagraphs 11(b)(ii) of this paragraph, and (iii) to the extent that the parties agree that the value of the payments exceeded $5,000 – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

  g. Defendant understands that with the exception of the Guideline provisions identified in this subparagraph as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified in this subparagraph as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

13. Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

14. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the applicable Guideline range, and shall recommend that the Court impose a term of imprisonment of 6 months in the custody of the Bureau of Prisons. The defendant agreed to cooperate and to plead guilty prior to the Seventh Circuit's decision in *U.S. v. Demaree*, 459 F.3d 791 (7th Cir. 2006). The government believes that the recommended sentence is a reasonable one in light of the pre-*Demaree* guidelines, the defendant's substantial cooperation, and the Section 3553 factors. The government's recommendation is not binding on the Court. The defendant is free to recommend whatever sentence he deems appropriate.

Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

15. If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

16. Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution, if appropriate, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. The defendant acknowledges that the appropriate amount of restitution will be determined by the Court. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

17. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

18.  Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.  Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.  For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income

tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21. This Plea Agreement is entirely voluntary and represents the entire agreement between the U. S. Attorney and defendant regarding defendant's criminal liability in the instant case.

22. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23.　Defendant understands that by pleading guilty he surrenders certain rights, including the following:

　　a.　**Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

　　　　i.　The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

　　　　ii.　If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

　　　　iii.　If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

  iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

  v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

  vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

  vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, and any term of imprisonment that is within or below the applicable guideline range determined by

the District Court, as well as any other part of the sentence, and any fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction, and any sentence that is within or below the applicable guideline range, or the manner in which that sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

    c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

    d.    **Waiver of the Statute of Limitations:** Defendant understands that he has the right to have the criminal charge in the indictment, and in the stipulated offense, brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the indictment, and in the stipulated offense, brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the indictment, and in the stipulated offense, was brought.

24. By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

26. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant

breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _April 8, 2008_

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
CHUCK MAALI  
Defendant

_____  
JACQUELINE STERN  
Assistant U.S. Attorney

_____  
STEVEN SHOBAT  
Attorney for Defendant